IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY GIORDANO           :      CIVIL ACTION
                           :
                           :
          v.               :
                           :
MARGARET MURANO-NIX, et al. :      NO. 12-7034


MEMORANDUM

McLaughlin, J.                          January 7, 2014

          This action arises out of Anthony Giordano's arrest on

December 16, 2010, for various theft-related crimes.  The arrest

warrant was based on a police report and affidavit of probable

cause drafted by Detective Margarita Moreno-Nix,[1] which was in

turn based on statements from Mr. Giordano's mother.  Mr.

Giordano argues that his mother's statements are false.  The

plaintiff was held in custody for approximately twenty-four

hours.  The criminal charges against Mr. Giordano were withdrawn

on December 8, 2011.

          The plaintiff brought suit against both Detective

Moreno-Nix and R. Seth Williams, the Philadelphia District

---

[1] The complaint and the docket reference the defendant as
"Margaret Murano-Nix," but the defendant's briefing and related
documents list her name as "Margarita Moreno-Nix."

Attorney,[2] alleging that his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution were violated during the execution of the arrest warrant.  The plaintiff also brought claims under Pennsylvania tort law, alleging assault and battery, negligence and gross negligence, malicious prosecution and malicious abuse of process of law, false arrest and false imprisonment, negligent infliction of emotional distress, and intentional infliction of emotional distress.[3]  The plaintiff's claims were asserted against Detective Moreno-Nix both in her official capacity and in her individual capacity.  Defendant Moreno-Nix has moved for summary judgment.  For the following reasons, the Court will now grant the defendant's motion for summary judgment in its entirety.

_____

[2] The Court has already granted a motion to dismiss in favor of the Philadelphia District Attorney, and all claims against him have been dismissed with prejudice.

[3] In his opposition to the motion for summary judgment, Mr. Giordano withdrew Counts 3 and 6 of his complaint, for negligence and negligent infliction of emotional distress. Pl.'s Opp. at 7.

I.   <u>Factual Background</u>[4]

    A.   <u>Detective Moreno-Nix</u>

        The defendant, Detective Margarita Moreno-Nix, has been employed with the Philadelphia Police Department since 1989 and has served as a detective for seventeen years.  Def.'s Mot., Ex. A ("Moreno-Nix Aff."), ¶¶ 1-3.  She has investigated crimes against the elderly in Philadelphia for seven years.  <u>Id.</u> ¶ 4.


    B.   <u>Interview with Norma Giordano and Patricia Duffy</u>

        In early to mid-January 2010, Norma Giordano reported to Detective Moreno-Nix that her son, Anthony Giordano, had stolen her home and all her belongings.  Moreno-Nix Aff. ¶ 5; <u>see also</u> Def.'s Mot., Ex. B ("Mar. 18, 2010 Investigation Report"); Pl.'s Opp., Ex. C ("Jan. 15, 2010 Taped Interview with Norma Giordano").[5]

---

[4] The defendant's motion notes that the plaintiff produced no evidence during the four-month discovery period, and "the only record developed in this case is comprised of the two hundred ninety-six pages of documents produced by Defendant with her Initial Disclosures."  The defendant has never received initial disclosures from the plaintiff.  Def.'s Br. at 2 n.1.  There have also been no depositions.  At oral argument, the plaintiff agreed that no discovery had been done.  12/17/13 Tr. at 4:5-11.

[5] The plaintiff argues several times in his opposition that his mother's interview occurred in January 2011, after his arrest in December 2010.  This is incorrect, however, as the plaintiff conceded at oral argument.  12/17/13 Tr. at 5:14-6:17.

On January 15, 2010, Detective Moreno-Nix met with Norma Giordano and her daughter, Patricia Duffy.  Moreno-Nix Aff. ¶ 7; see also Mar. 18, 2010 Investigation Report; Jan. 15, 2010 Taped Interview with Norma Giordano.  This meeting was the defendant's first contact with any member of the Giordano family, including the plaintiff's father, Joseph Giordano, who was a police officer with the Philadelphia Police Department.  Moreno-Nix Aff. ¶¶ 8-11.

Ms. Giordano reported that shortly after her husband passed away in early 2007, her son, the plaintiff, had her sign some documents immediately after awakening.  She did not realize what documents she was signing, but she trusted her son.  She discovered later that she had transferred the deed to her home to her son's name.  Moreno-Nix Aff. ¶¶ 12-13; Jan. 15, 2010 Taped Interview with Norma Giordano.

Anthony Giordano and his wife periodically lived with Ms. Giordano after the death of her husband.  Ms. Giordano felt threatened, intimidated, and uncomfortable in her home with the plaintiff there.  For example, the plaintiff punched the headboard on Ms. Giordano's bed, breaking bones in his hand.  Ms. Giordano also felt that her son tried to keep her away from her daughter.  Ms. Giordano eventually moved out of her home and to her daughter's home.  Moreno-Nix Aff. ¶¶ 14-15, 18; Jan. 15, 2010 Taped Interview with Norma Giordano.

4

Ms. Giordano reported to Detective Moreno-Nix several ways in which she was financially harmed by her son. He had sold her house, containing most of her belongings, without her knowledge. He removed several gold coins from her safety deposit box. He changed the beneficiaries of her investment account, and he caused an annuity to be cashed out, resulting in a loss of money. Furthermore, Ms. Giordano reported that her son had taken several burial plots she purchased, and as a result, she could not be buried next to her husband. Moreno-Nix Aff. ¶¶ 17, 19-23; Jan. 15, 2010 Taped Interview with Norma Giordano.

Ms. Giordano provided Detective Moreno-Nix with a handwritten, signed statement that she drafted in 2009 because she was concerned about her poor health. Moreno-Nix Aff. ¶¶ 24-25; Def.'s Mot., Ex. C ("2009 Statement by Norma Giordano"). Detective Moreno-Nix recorded the interview in January 2010 because of similar concerns about Ms. Giordano's health. Moreno-Nix Aff. ¶ 26; Jan. 15, 2010 Taped Interview with Norma Giordano. This handwritten statement corroborated Ms. Giordano's verbal statement.

During the taped interview, Ms. Giordano answered several questions with responses that she was not sure of the answer or that she did not know certain information. Ms. Giordano's daughter, Patricia Duffy, was also present at this

interview.  Ms. Duffy assisted Ms. Giordano in answering a few
questions, and she was also asked some questions directly by
Detective Moreno-Nix.  Ms. Duffy's answers helped Ms. Giordano
refresh her recollection on some issues.  Jan. 15, 2010 Taped
Interview with Norma Giordano.

       C.   Further Investigation by Detective Moreno-Nix

      After meeting with Ms. Giordano, Detective Moreno-Nix
investigated Ms. Giordano's allegations and sought documentation
that would substantiate or undermine Ms. Giordano's claims.
Moreno-Nix Aff. ¶¶ 27-28.

      Detective Moreno-Nix investigated the times the police
had been called to the address where Ms. Giordano lived with her
son.  She was able to conclude that several domestic incidents
had been reported from that address, including the one in which
Mr. Giordano injured his hand.  Moreno-Nix Aff. ¶ 29; Def.'s
Mot., Ex. D ("Moreno-Nix Notes").

      The defendant investigated the dates on which Ms.
Giordano had signed financial documents, and she found that Ms.
Giordano had signed a document in February 2007 that made the
plaintiff the sole beneficiary of her Police and Fire Credit
Union account.  Def.'s Mot., Ex. E ("Feb. 7, 2007 Beneficiary
Information").  The defendant reviewed paperwork, including a
letter from Ms. Giordano's physician, describing Mr. Giordano's

attempt to have Ms. Giordano declared incompetent.  Def.'s Mot.,
Ex. F ("Nov. 28, 2008 Neurological Associates Letter").
Documents also demonstrated that Mr. Giordano had accessed his
mother's safety deposit box in January 2008.  Def.'s Mot., Ex. G
("Jan. 31, 2008 Surrender Form").  Detective Moreno-Nix
investigated checks written to Mr. Giordano by his mother over a
two-year period, totaling $47,635.  Lastly, Detective Moreno-Nix
confirmed that Ms. Giordano's home had, in fact, been sold.
Moreno-Nix Aff. ¶¶ 30-34.


      D.    <u>Affidavit of Probable Cause and Arrest Warrant</u>

      As a result of her investigation, Detective Moreno-Nix
determined that the documentary evidence corroborated the
written and verbal allegations made by Norma Giordano, and she
drafted an affidavit of probable cause that reflected the
statements made by Ms. Giordano.  Moreno-Nix Aff. ¶¶ 35-36.

      Detective Moreno-Nix submitted a draft arrest warrant
and a draft affidavit of probable cause to the District
Attorney's Office Charging Unit, in which she included charges
against Mr. Giordano of forgery, theft by unlawful taking, theft
by deception, identity theft, tampering with records, and
securing execution.  Attorneys at the District Attorney's Office
added an additional charge of "recordable instruments."  Moreno-
Nix Aff. ¶ 37.

Once the Charging Unit had reviewed and edited the charges, the defendant swore out the final affidavit. A bail commissioner reviewed the affidavit and issued an arrest warrant for Anthony Giordano. Moreno-Nix Aff. ¶ 38; Def.'s Mot., Ex. H ("Affidavit of Probable Cause").

E.   Execution of Arrest Warrant

Detective Moreno-Nix requested assistance from the SWAT team in executing the arrest warrant because she thought the number of guns owned by Anthony Giordano posed a potential threat to officer safety. Moreno-Nix Aff. ¶ 39.

The plaintiff described his experience of the arrest in interviews with the Philadelphia Police Internal Affairs Department. He said the police pounded on his door around 6:00 am on December 16, 2010. A police van was outside, and the man at the door was dressed in black. Several officers yelled at Mr. Giordano to get down when he opened the door, and one pointed a gun at him. The plaintiff described that several officers refused to tell him and his wife why they were there. One female officer told him they were there because he stole his mother's property, and another demanded the combination to his safe. The police then took him to the Major Crimes Unit. Def.'s Mot., Ex. I ("Jan. 3, 2012 Statement of Anthony Giordano"), at 1-2.

Detective Moreno-Nix states in her affidavit that "[d]uring the execution of the warrant, I had no physical contact with Anthony Giordano." Moreno-Nix Aff. ¶ 40. The plaintiff's statements to the Philadelphia Police Internal Affairs Department corroborate Detective Moreno-Nix's statement. He complained to the Internal Affairs Department only of men that had offensive contact with him. Jan. 3, 2012 Statement of Anthony Giordano at 1-2; Def.'s Mot., Ex. J ("Feb. 3, 2012 Statement of Anthony Giordano"), at 1-3.

The plaintiff described being struck in the temple with a SWAT team member's submachine gun. Jan. 3, 2012 Statement of Anthony Giordano at 2; Feb. 3, 2012 Statement of Anthony Giordano at 2. He also described how his head was pushed down with the barrel of the gun. Jan. 3, 2012 Statement of Anthony Giordano at 1; Feb. 3, 2012 Statement of Anthony Giordano at 1-2.

The plaintiff suffered minimal injuries, however, as a result of the arrest. He stated that his injuries were "just a bruise on my thigh. I never went to the hospital. I'm not making a big deal about that." Furthermore, he never obtained any medical treatment for these injuries. Jan. 3, 2012 Statement of Anthony Giordano at 3. Mr. Giordano also alleges that he lost two days of work as a result of his arrest,

although there is no evidence to substantiate this allegation in the record.  Compl. ¶ 32.

     F.   <u>Events Following Arrest and Citizen's Complaint</u>

On December 19, 2011, Joseph Giordano, Anthony Giordano's brother, made a citizen's complaint against Officer J.J. Thompson.  Pl.'s Opp., Ex. A ("Dec. 19, 2011 Criminal Complaint").  This exhibit contains a handwritten statement by Joseph Giordano, as well as a lengthy statement that appears to have been written by Anthony Giordano.  This statement is not signed or verified.

The statement that the Court assumes was written by Anthony Giordano contains a description of events following his arrest, as well as several lists:  guns owned by Anthony Giordano, rifles and long guns, handguns, ammunition, gun parts, ammunition storage magazines, and personal items taken.  <u>Id.</u> at 31-38.[6]

Mr. Giordano arrived at the police station at 39th Street and Lancaster Avenue around 7:30 am on December 16, 2010. The police asked him where his Glock handgun was located.  Mr. Giordano told the officer that it was sold legally six months

---

[6] The Court assumes this list is of items taken from Mr. Giordano's home during his arrest, although that fact is not substantiated in the record.

ago, and the fact that the gun was sold was relayed to the officers still at his home.  Id. at 23.

Mr. Giordano was moved to another police station around 10:00 am.  At approximately 6:00 pm, Mr. Giordano took part in a videoconference pre-bail questionnaire.  Around 2:00 am on December 17, 2010, Mr. Giordano attended his bail hearing via another videoconference.  Mr. Giordano states that this is the first time that he was told some of the charges against him—namely, that he was being blamed for things taken from his mother.  Bail was set and paid, and Mr. Giordano was released at 7:00 am on December 17, 2010.  Id. at 23-25.

Mr. Giordano lists several events that occurred on the day of his arrest and following his arrest.  His wife was told that she would receive a list of everything taken from the home. The plaintiff states he was not given a list until four months later.  Id. at 27.

On December 20, 2010, Mr. Giordano went to see his doctor because he "was sick and had a lot of stress from what happened on 12-16-10 and 12-17-10 from the police SWAT raid." As a result, he was put on Xanax.  Id. at 28.

On January 6, 2011, the plaintiff was contacted by a detective from the Philadelphia Police Department and was told he could pick up his guns.  He described that he and his wife's stress level as a result of this call was, from 1 to 10, "at a

10."  He further describes how his wife and dog had stressed
reactions from their experiences during the arrest.  <u>Id.</u> at 29.


     G.    <u>Prosecution and Withdrawal of Charges</u>

     The docket from Mr. Giordano's criminal prosecution
lists seven scheduled preliminary hearing dates, all of which
were continued at the request of the government.  On December 8,
2011, the date of the seventh preliminary hearing, all of the
criminal charges against Anthony Giordano were withdrawn.  Pl.'s
Opp., Ex. B ("Municipal Court Docket for <u>Commonwealth v.
Giordano</u>").

II.  <u>Analysis</u>[7]

    A.    <u>Plaintiff's Claims Under § 1983 for Fourth, Fifth,
        Eighth, and Fourteenth Amendment Violations</u>

       The first count in the complaint seeks relief under 42
U.S.C. § 1983, which provides a private right of action against
any person who, acting under color of state or territorial law,
abridges "rights, privileges, or immunities secured by the
Constitution and laws" of the United States.  <u>Nextel Partners
Inc. v. Kingston Twp.</u>, 286 F.3d 687, 693-94 (3d Cir. 2002).

---

       [7] A party is entitled to summary judgment if there "is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  The moving party bears the initial burden of
demonstrating the absence of any genuine issue of material fact,
which may be satisfied by demonstrating the party who bears the
burden of proof lacks evidence to support his case.  <u>Celotex
Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once a properly
supported motion for summary judgment is made, the burden of
production shifts to the nonmoving party, who must set forth
specific facts showing that there is a genuine issue for trial.
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).
Where a moving party identifies an absence of necessary evidence
in the record, the non-moving party must rebut the motion with
facts in the record and cannot rest solely on assertions made in
the pleadings, legal memoranda, or oral argument.  <u>Berckeley
Inv. Grp. v. Colkitt</u>, 455 F.3d 195, 201 (3d Cir. 2006).  A party
opposing summary judgment must present affirmative evidence—
whether direct or circumstantial—to defeat summary judgment, and
may not rely simply on the assertion that a reasonable jury
could discredit the opponent's account.  <u>Estate of Smith v.
Marasco</u>, 318 F.3d 497, 514 (3d Cir. 2003).

       In reviewing a motion for summary judgment, the Court does
not resolve factual disputes or make credibility determinations,
and must view facts and inferences in the light most favorable
to the party opposing the motion.  <u>Siegel Transfer, Inc. v.
Carrier Express, Inc.</u>, 54 F.3d 1125, 1127 (3d Cir. 1995).

The plaintiff's complaint alleges that violations of 42 U.S.C. § 1983 occurred under the Fourth, Fifth, Eighth, and Fourteenth Amendments.  Compl. ¶¶ 35-40.  Mr. Giordano alleges that he was deprived of the following rights:  to be secure in his person and property, to be free from unlawful detention, to be free from unlawful seizure of his person and from false arrest, to be free from excessive force, to be free from cruel and unusual punishment, and to due process of law.  Id. ¶ 39. The Court interprets these allegations as the following claims: malicious prosecution and false arrest under the Fourth Amendment, and excessive force under the Eighth Amendment and Fourth Amendment.[8]

---

[8] Any stand-alone Fourteenth Amendment claim is appropriately subsumed by the plaintiff's Fourth or Eighth Amendment claims.  Noting its "reluctan[ce] to expand the concept of substantive due process," the Supreme Court has established the "more-specific-provision rule."  County of Sacramento v. Lewis, 523 U.S. 833, 842-43 (1998).  Under this rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  United States v. Lanier, 520 U.S. 259, 272 n.7 (1997); see also Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010).  Because Mr. Giordano alleges the same facts in support of all of his constitutional claims, the Court does not independently analyze those facts under a Fourteenth Amendment substantive due process cause of action, but only under the Fourth and Eighth Amendments.

Furthermore, there is no Fifth Amendment claim supported by the evidence.  The Supreme Court has held that § 1983 malicious prosecution claims cannot be based on substantive due process, but rather must be based on provisions of the Bill of Rights

1.   Claims Based on Malicious Prosecution and False
     Arrest

The plaintiff's first set of claims under § 1983 pertains to his detention, arrest, charging, and prosecution as a result of the execution of an arrest warrant at his home on December 16, 2010.  The plaintiff argues that the arrest warrant was fraudulent and baseless and thus could not be adequate justification for his seizure.  Pl.'s Opp. ¶ 5, at 4.

The Fourth Amendment "prohibits a police officer from arresting a citizen except upon probable cause." Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995).  Where a police officer causes an arrest to be made pursuant to a warrant that he obtained on the basis of statements he knew to be false or on the basis of statements he makes in reckless disregard of the truth, a plaintiff may recover damages under § 1983 for "unreasonable seizure" of his person in violation of the Fourth Amendment.  Lippay v. Christos, 996 F.2d 1490, 1502-03 (3d Cir. 1993).

_____

that provide "an explicit textual source of constitutional protection." Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).  Neither the allegations in Mr. Giordano's complaint nor the evidence in the record contain facts necessary to establish an independent denial of procedural due process or a violation of the protections of the Fifth Amendment.  Instead, Mr. Giordano's malicious prosecution claim seeks to vindicate his rights under the Fourth Amendment.  See, e.g., Mantz v. Chain, 239 F. Supp. 2d 486, 501 (D.N.J. 2002).

a.   <u>False Arrest</u>

An arrest warrant "does not, in itself, shelter an officer from liability for false arrest." <u>Wilson v. Russo</u>, 212 F.3d 781, 786 (3d Cir. 2000).  Instead, a plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence that: (1) the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) such statements or omissions are material, or necessary, to the finding of probable cause.  <u>Id.</u> at 786-87.  Thus, a court faced with a claim that an arrest warrant contains false assertions and omissions must first determine whether the officer made those assertions or omissions deliberately or with reckless disregard for the truth.

Whether something is done deliberately is a question of fact.  Assertions are made with reckless disregard when, viewing all the evidence, the affiant must have entertained serious doubts as to the truth of her statements or had obvious reasons to doubt the accuracy of the information she reported. <u>Id.</u> at 788.  Assertions can be made with reckless disregard for the truth even if they involve minor details.  Recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth.

16

Id.  "[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know" in making a probable cause determination.  Id. at 783.

    After establishing that "there [is] sufficient evidence of omissions and assertions made knowingly, or with reckless disregard for the truth," a court "assess[es] whether the statements and omissions made with reckless disregard of the truth were 'material, or necessary, to the finding of probable cause.'"  Id. at 789 (quoting Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)).  "To determine the materiality of the misstatements and omissions," a court must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether . . . the 'corrected' . . . affidavit would establish probable cause."  Id.

    The Court finds no evidence of any omissions or misrepresentations by Detective Moreno-Nix in the record. Furthermore, plaintiff could not identify any during oral argument.  12/17/13 Tr. at 8:13-9:16.  The plaintiff cites no evidence of any omission or misrepresentation in his opposition to the motion for summary judgment.  Rather, the complaint makes the bare assertion that "[t]he information that Norma Giordano purportedly conveyed to defendant, Detective Margaret Murano-Nix

was patently false, inconsistent, and was obviously
unbelievable."  Compl. ¶ 14.

Mr. Giordano's only evidence of any possible
misrepresentation or omission is in his statement to the
Philadelphia Police Internal Affairs Department.[9]  There, he
described how his sister lied, coerced his mother, and she "used
the criminal system to go after me for something that should
have been handled in civil courts."  Jan. 3, 2012 Statement of
Anthony Giordano at 3-4.  "My sister was angry that my father
wrote her out of his will."  Id. at 3.  Those statements are the
sole evidence of information that was not included in the
application for the warrant.  It is not clear, however, that any
evidence exists that Patricia Duffy was lying, or that such
evidence was available or was known by Detective Moreno-Nix at
the time of the warrant application.  There is no additional
evidence in the record to corroborate that statement, and

_____

[9] The plaintiff also argues that Detective Moreno-Nix
conducted no investigation before the arrest warrant because his
mother's interview took place on January 15, 2011.  Pl.'s Opp.
¶¶ 2-11, at 3-5.  Again, this is not correct.  The interview
took place on January 15, 2010, and the arrest was almost a year
later, on December 16, 2010.  Therefore, to the extent that
plaintiff argues that the defendant did not conduct an adequate
or reasonable or sufficient investigation prior to charging the
plaintiff based on the dates of the interview and the arrest,
that argument is simply wrong.  Plaintiff conceded at oral
argument that this argument was incorrect.  12/17/13 Tr. at
5:14-6:17.

Detective Moreno-Nix found documentation that she believed corroborated Ms. Giordano's statement.

Even interpreting this meager evidence in favor of Mr. Giordano, the first prong of the false arrest claim fails.[10] Accordingly, summary judgment is granted to the defendant on the § 1983 claims to the extent the hinge on false arrest.

b.   <u>Malicious Prosecution</u>

To prevail in a § 1983 action malicious prosecution action, a plaintiff must show:  (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. <u>DiBella v. Borough of Beachwood</u>, 407 F.3d 599, 601 (3d Cir. 2005).

---

[10] The Court does address below whether probable cause existed under the evidence available to the defendant, as it is relevant to both the false arrest and the malicious prosecution claim.  In analyzing false arrest claims, a court insulates a defendant from liability in finding that "[p]robable cause . . . . exist[ed] as to any offense that could be charged under the circumstances." <u>Johnson v. Knorr</u>, 477 F.3d 75, 84-85 (3d Cir. 2007).

The plaintiff was clearly subject to a criminal proceeding, as evidenced by the criminal docket attached to the plaintiff's opposition to the motion for summary judgment.  See Municipal Court Docket for Commonwealth v. Giordano.  Under the Restatement (Second) of Torts, "the formal abandonment of the proceedings by the public prosecutor" constitutes "terminat[ion] in favor of the accused."  Restatement (Second) of Torts § 659 (1977); see also Haefner v. Burkey, 626 A.2d 519, 521 (Pa. 1993) (adopting Restatement definition); Milbourne v. Baker, No. 11-1866, 2012 WL 1889148, at *12 (E.D. Pa. May 23, 2012).  Thus, the criminal proceeding terminated in Mr. Giordano's favor.

The defendant argues that the plaintiff cannot show any evidence of malice in the record.  Malice is defined as "ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose."  Lippay, 996 F.2d at 1502 (emphasis omitted).  The plaintiff makes no argument on malice, other than his incorrect statements regarding the date of his mother's interview.  The Court agrees with the defendant that there is no evidence in the record to demonstrate malice.  There is, however, an indirect way of showing malice.  From the absence of probable cause, a factfinder may infer that an arrest was motivated by malice.  Eckman v. Lancaster City, 742 F. Supp.

2d 638, 657 (E.D. Pa. 2010), aff'd, 515 F. App'x 93 (3d Cir. 2013), and aff'd, 529 F. App'x 185 (3d Cir. 2013).[11]

---

[11] A finding that probable cause existed for one of the charges will dispose of malicious prosecution claims for the remaining charges. See Wright v. City of Phila., 409 F.3d 595, 604 (3d Cir. 2005). This rule applies to claims of false arrest and situations where "the circumstances leading to the arrest and prosecution were totally intertwined." Johnson, 477 F.3d at 82 n.9. Specifically, in Wright, the defendant police officer merely "prepared an affidavit of probable cause for [the plaintiff's] arrest, and then, after an assistant district attorney approved the affidavit, arrested the plaintiff." Id. at 84. Because the officer's involvement ended at the time of the arrest, the court determined a finding of probable cause for one of the charges "dispose[d] of [the plaintiff's] malicious prosecution claims with respect to all charges." Wright, 409 F.3d at 604.

In Johnson, however, the officer's conduct was "bifurcated in the sense that the agents first arrested [the plaintiff] and then, after the arrest, [the officer-defendant] took steps by supplying information to [another officer] that led to [the plaintiff's] prosecution" on additional charges. Johnson, 477 F.3d at 82 n.9. Thus, the officer's "involvement in both the arrest and the initiation of criminal proceedings against [the plaintiff] was more extensive and lasted beyond the issuing of an affidavit of probable cause for his arrest and the arrest itself." Id. at 84. Because of the bifurcated nature of the officer-defendant's conduct, the court in Johnson declined to apply Wright, and held the court must separately analyze each charge claimed to have been maliciously prosecuted. Id. at 85.

Here, the plaintiff's malicious prosecution claim falls under Wright because there is no evidence in the record that Detective Moreno-Nix's involvement extended beyond Mr. Giordano's arrest. See Martin v. Anderson, No. 07-2965, 2008 WL 4761734, at *7-8 (E.D. Pa. Oct. 29, 2008). The plaintiff's statements at oral argument that the police were given exculpatory evidence by Mr. Giordano's criminal counsel or were otherwise involved in his prosecution are unsubstantiated by the record. 12/17/13 Tr. at 6:18-7:13, 9:17-22, 12:13-13:21.

c.   Probable Cause

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti, 71 F.3d at 483; see also Wilson, 212 F.3d at 789 ("Probable cause exists if there is a 'fair probability' that the person committed the crime at issue.").  Probable cause does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Adams v. Williams, 407 U.S. 143, 149 (1972).  In analyzing whether probable cause existed for an arrest, the court must take a "totality-of-the-circumstances approach." Illinois v. Gates, 462 U.S. 213, 230 (1983).

Generally, the existence of probable cause is an issue reserved for the jury, particularly in cases where the probable cause determination rests on credibility conflicts. Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000). "However, a district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly." Id. at 788-89 (quoting Sherwood, 113 F.3d at 401).

Typically, once a police officer has determined that probable cause exists, she has no duty to further investigate the complainant's accusation or interview other witnesses in an effort to find exculpatory evidence.  See Merkle, 211 F.3d at 790 n.8; see also Wooleyhan v. Cape Henlopen Sch. Dist., No. 10-153, 2011 WL 1875710, at *9 (D. Del. May 17, 2011).  Even a careless and incomplete investigation does not automatically preclude a finding of probable cause.  Harris v. Jacobs, No. 11-4685, 2012 WL 4109052, at *11 (E.D. Pa. Sept. 19, 2012).

When police receive a reliable identification by a victim of his or her attacker, the police have probable cause to arrest.[12]  See Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (finding probable cause even though the victim accused her husband only after identifying a different attacker), abrogated on other grounds by Curley v. Klem, 499 F.3d 199 (3d Cir. 2007); see also Lincoln v. Hanshaw, 375 F. App'x 185, 190 (3d Cir. 2010).  Police can assess the victim's demeanor, find the story

---

[12] An officer may have a duty to further investigate when plainly exculpatory evidence or circumstances indicating a witness's unreliability are known.  In such situations, courts should consider whether the exculpatory evidence that was available to the officer at the time would have outweighed any inculpatory evidence in making his finding of probable cause.  Harris, 2012 WL 4109052, at *7.  There is no evidence here of exculpatory information or unreliability of the witnesses that would undermine the results of the defendant's investigation.

credible, and rely on the identification to make an arrest.   See
Mitchell v. Obenski, 134 F. App'x 548, 551 (3d Cir. 2005).

   Detective Moreno-Nix had probable cause to arrest Mr.
Giordano because his mother identified her son as having stolen
her home and property.   That account was corroborated by Mr.
Giordano's sister, and Detective Moreno-Nix independently
verified Ms. Giordano's statements with documentary evidence.
The affidavit of probable cause prepared by Detective Moreno-Nix
contains a summary of the allegations made by Ms. Giordano that
the plaintiff, her son, systematically stole monetary, personal,
and real property from her after the death of her husband.
Moreno-Nix Aff. ¶¶ 36, 38; see also Affidavit of Probable Cause.
This affidavit was supported not just by the oral and written
statements of Ms. Giordano, but by the defendant's nearly year-
long investigation into those allegations, during which she
found corroborating documentary evidence.   Moreno-Nix Aff.
¶¶ 12-35.   There is no evidence that the affidavit of probable
cause contained a material misrepresentation or falsehood, or
that a material omission was made.

   Based on these facts, probable cause existed to
initiate the arrest of Mr. Giordano on the theft-related crimes
with which he was charged.   Accordingly, summary judgment is

granted to the defendant on the § 1983 claims to the extent they are based on malicious prosecution.[13]

### 2.  Excessive Force

An excessive force claim can be brought for violations of the Eighth Amendment or the Fourth Amendment.  Neither the plaintiff's complaint, nor his opposition to the motion for summary judgment, make clear whether Mr. Giordano's excessive force claim is related to his arrest or the period that he was in custody following his arrest.  At oral argument, Mr. Giordano represented to the Court that the excessive force claim relates to Mr. Giordano's arrest.  12/17/13 Tr. at 13:25-15:10. Therefore, the Court analyzes Mr. Giordano's excessive force claim under the Fourth Amendment.[14]

The Fourth Amendment prohibits the use of unreasonably excessive force when making an arrest.  Wilson v. Dewees, No.

---

[13] The existence of probable cause also provides a second rationale for granting summary judgment to the defendant on the false arrest claim.

[14] In any event, the Eighth Amendment does not apply here because the cruel and unusual punishment clause "was designed to protect those convicted of crimes" and, thus, prohibits the "unnecessary and wanton infliction of pain" on prisoners in the custody of the state.  Ingraham v. Wright, 430 U.S. 651, 664, 670 (1977).  The plaintiff does not discuss any use of force against him during his period of detention over two days.  The plaintiff makes no arguments about his time in custody or against prison officials.  Mr. Giordano therefore could not prove an excessive force violation under the Eighth Amendment.

10-3915, 2013 WL 5567574, at *7 (E.D. Pa. Oct. 9, 2013) (citing Brower v. Cnty. of Inyo, 489 U.S. 593, 599 (1989)).  To state a claim for excessive force under § 1983, the plaintiff must show that a seizure occurred and that it was unreasonable.  Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).  Whether a police officer uses excessive force during the course of an arrest is determined using a reasonableness standard, giving careful attention to the facts and circumstances of each particular case, and recognizing that the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat of physical coercion to effect it.  Graham, 490 U.S. at 396.

Factors for the Court to consider when making this determination include the severity of the crime, whether the suspect posed an immediate threat to public safety, and whether the suspect was actively resisting or evading arrest.  Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004).  Other factors include the possibility that the suspect is violent, the duration of the action, and the possibility that the suspect may be armed.  Sharrar, 128 F.3d at 822.

A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.  Baraka v.

26

McGreevey, 481 F.3d 187, 210 (3d Cir. 2007).  Personal involvement can be demonstrated by evidence that the officer personally directed or had actual knowledge and acquiescence of the alleged wrongs.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  There is no record evidence that Detective Moreno-Nix individually used force against the plaintiff during his arrest.   Rather, the plaintiff made statements to the Philadelphia Police Internal Affairs Department, that only men had offensive contact with him.  Jan. 3, 2012 Statement of Anthony Giordano at 1-2; Feb. 3, 2012 Statement of Anthony Giordano at 1-3.

At oral argument, Mr. Giordano argued that Detective Moreno-Nix acted with excessive force because she was present and directed the SWAT team during his arrest.  12/17/13 Tr. at 13:25-15:10.  There is no evidence that Detective Moreno-Nix was the supervisor of the SWAT unit, or that she directed any use of force against Mr. Giordano.  There is only evidence that she requested assistance from the SWAT team in executing the arrest warrant.  Moreno-Nix Aff. ¶ 39.

Even assuming the defendant had some supervisory role over the SWAT team, a defendant cannot be individually liable as a supervisor of the SWAT unit for the SWAT officers' individual uses of force.  The liability of a supervisor of the SWAT unit is based on the supervisor's own acts or omissions, not those of

the individual officers in the unit.  See Agresta v. City of
Phila., 801 F. Supp. 1464, 1468 (E.D. Pa. 1992), aff'd sub nom.
Agresta v. Sambor, 993 F.2d 223 (3d Cir. 1993).

        Therefore, the only remaining possibility for a Fourth
Amendment violation is whether Detective Moreno-Nix's use of a
SWAT team to execute the arrest warrant was excessive force.  A
decision to employ a SWAT-type team can constitute excessive
force if it is not "objectively reasonable" to do so in light of
"the totality of the circumstances."  Estate of Smith v.
Marasco, 318 F.3d 497, 515 (3d Cir. 2003).  The question whether
the use of force is "objectively reasonable" is determined by
analyzing the factors discussed above, such as the severity of
the crime and the threat to public safety.

        In Marasco, the Third Circuit could not conclude that
the troopers acted unreasonably in activating SERT, a SWAT-like
team, because

> [t]he troopers who were responsible for the decision
> to activate SERT . . . had limited knowledge of [the
> target of the SERT team's] condition at the time the
> decision was made.  Thus, it was not unreasonable for
> them to conclude that the display of force entailed in
> the activation of SERT was not "of such an extent as
> to lead to injury."

Estate of Smith v. Marasco, 430 F.3d 140, 150 (3d Cir. 2005).

        More recently, in Hogan v. City of Easton, No. 04-759,
2006 WL 2645158 (E.D. Pa. Sept. 12, 2006), the court found it
was "objectively reasonable" for the officers to have had a SWAT

28

team present in light of the fact that the person being arrested
was armed and "had fired a shotgun into the basement wall,
continued to resist the . . . [o]fficers, and threatened the
safety of the [o]fficers and others." Id. at *13.

Here, Detective Moreno-Nix knew Mr. Giordano had a
large number of guns in the house.  The Court is not clear on
how the defendant had this information, or what her knowledge
was on the extent of Mr. Giordano's gun collection.  Her
knowledge that Mr. Giordano had a number of guns in his home is
supported by the statement attached to the Citizen's Complaint,
listing numerous types of weapons and gun paraphernalia, even if
the exact inventory was not known to Detective Moreno-Nix at the
time.  Dec. 19, 2011 Criminal Complaint at 31-38.

Furthermore, the defendant had information regarding
Mr. Giordano's behavior when confronted, such as domestic
disturbance visits from the police, and how Mr. Giordano injured
his hand by punching his mother's headboard while she was in the
bed.  Detective Moreno-Nix also knew that Mr. Giordano's
behavior was considered threatening and intimidating by his
mother, enough to make her leave her home.

It does not appear from the record before the Court
that any mitigating factors against using a SWAT team, such as
mental illness, were present.  Although Mr. Giordano's arrest
was for theft crimes, and the record shows no history of serious

29

violence in his background, there was still a real risk that he
would be armed and that there were other guns in the home.
These facts demonstrate that employing a SWAT team under these
circumstances was a reasonable use of force.  Therefore, summary
judgment is granted to the defendant on the § 1983 claims to the
extent they are based on excessive force.


> 3.   Qualified Immunity

The defendant argues that, even if the Court finds
that genuine disputes of material fact preclude entry of
judgment against the plaintiff on his constitutional claims,
Detective Moreno-Nix is still entitled to qualified immunity in
light of her investigation and her reliance upon the statements
made by the complaining witnesses.

The Court need not reach the qualified immunity
question because, as discussed above, there is no evidence in
the record to support Mr. Giordano's constitutional claims.  The
defendant had probable cause to seek an arrest warrant against
Mr. Giordano, and there is no evidence of lies or coerced
statements beyond Mr. Giordano's bare assertions.  Lastly, the
record does not support that excessive force was used against
the plaintiff during his arrest.

B.   State Law Claims

The plaintiff's complaint includes claims under
Pennsylvania law for malicious prosecution and malicious abuse
of process, and false imprisonment and false arrest.  The
plaintiff also alleges the torts of assault and battery and
intentional infliction of emotional distress.  Lastly, the
plaintiff alleges torts of negligence and negligent infliction
of emotional distress.  The Court grants summary judgment to the
defendant on these state law claims.


1.   False Arrest and False Imprisonment

False arrest and false imprisonment are essentially
the same claim.  Olender v. Twp. of Bensalem, 32 F. Supp. 2d
775, 791 (E.D. Pa. 1999), aff'd sub nom. Olender v. Rubenstein,
202 F.3d 254 (3d Cir. 1999).  False arrest is synonymous with
false imprisonment where a defendant purports to act for the
purpose of securing the administration of the law without actual
legal justification.  Osgood v. Borough of Shamokin Dam, 420
A.2d 613, 614 (Pa. Super. Ct. 1980).

Under Pennsylvania law, the elements of false
imprisonment are:  (1) detention of another person; and (2) the
unlawfulness of such detention.  Renk v. City of Pittsburgh, 641
A.2d 289, 293 (Pa. 1994); see also Verdier v. Borough, 796 F.
Supp. 2d 606, 631 (E.D. Pa. 2011).   The elements of false

arrest under Pennsylvania law are:  (1) an arrest made without probable cause; or (2) an arrest made by a person without privilege to do so.  McGriff v. Vidovich, 699 A.2d 797, 799 n.3 (Pa. Commw. Ct. 1997); see also Colbert v. Angstadt, 169 F. Supp. 2d 352, 358 (E.D. Pa. 2001).

As under § 1983, an arrest without probable cause sufficient to establish a false arrest claim also gives rise to a claim for false imprisonment.  Gilbert v. Feld, 842 F. Supp. 803, 821 (E.D. Pa. 1993).  The tests for determining probable cause are essentially the same under the federal and Pennsylvania constitutions.  Lynch v. Hunter, No. 00-1331, 2000 WL 1286396, at *5 (E.D. Pa. Sept. 1, 2000) (citing Commonwealth v. Gayle, 673 A.2d 927, 931 n.9 (Pa. Super. Ct. 1996)), amended by 2000 WL 1793396 (E.D. Pa. Nov. 22, 2000).  Thus, the probable cause standard under the Fourth Amendment is equally applicable to the plaintiff's state law claims.  Colbert, 169 F. Supp. 2d at 359 n.10.

Because the Court concluded above that there was probable cause to arrest Mr. Giordano under the Fourth Amendment, that conclusion also holds under Pennsylvania state law.  Therefore, Mr. Giordano's false arrest claim fails.

2.  <u>Malicious Prosecution</u>

In order to sustain a cause of action for malicious
prosecution under Pennsylvania law, the plaintiff must prove
that the defendant (1) instituted proceedings against the
plaintiff; (2) without probable cause; (3) with actual malice;
and (4) that the proceedings terminated in the plaintiff's
favor.  <u>Lippay</u>, 996 F.2d at 1502; <u>Kelley v. Gen. Teamsters,
Chauffeurs, and Helpers, Local Union 249</u>, 544 A.2d 940, 941 (Pa.
1988); <u>Corrigan v. Cent. Tax Bureau of Pa., Inc.</u>, 828 A.2d 502,
505 (Pa. Commw. Ct. 2003).

Malice includes ill will in the sense of spite, the
use of a prosecution for an extraneous, improper purpose, or the
reckless and oppressive disregard of the plaintiff's rights.
<u>Perry v. Redner's Markets, Inc.</u>, No. 09-5645, 2013 WL 5467885,
at *5 (E.D. Pa. Sept. 30, 2013).  Malice may be inferred from
the absence of probable cause.  <u>Kelley</u>, 544 A.2d at 941; <u>Perry</u>,
2013 WL 5467885, at *5.

The requirements to prove malicious prosecution under
Pennsylvania law are almost identical to the federal
counterpart, except that a plaintiff need not prove a
deprivation of liberty consistent with the concept of seizure.
Under Pennsylvania law, a claim of malicious prosecution
requires a plaintiff to prove four of the five elements required

33

by a federal malicious prosecution claim.  See Kossler v.
Crisanti, 564 F.3d 181, 186 n.2 (3d Cir. 2009) (en banc).

Therefore, for the same reasons that the plaintiff's
malicious prosecution claim fails under federal law, the
plaintiff's malicious prosecution claim fails under Pennsylvania
law.  See, e.g., Domenech v. City of Phila., No. 06-1325, 2009
WL 1109316, at *17 (E.D. Pa. Apr. 23, 2009).


### 3.   Malicious Abuse of Process

Pennsylvania recognizes a cause of action for abuse of
process where the defendant (1) used a legal process against the
plaintiff, (2) primarily to accomplish a purpose for which the
process was not designed; and (3) harm has been caused to the
plaintiff.  Rosen v. Am. Bank of Rolla, 627 A.2d 190, 192 (Pa.
Super. Ct. 1993); see also Douris v. Schweiker, 229 F. Supp. 2d
391, 404 (E.D. Pa. 2002), aff'd sub nom. Douris v. Rendell, 100
F. App'x 126 (3d Cir. 2004).

There is no action for abuse of process when the
process is used for the purpose for which it is intended, but
there is an incidental motive of spite or an ulterior purpose of
benefit to the defendant.  Rosen, 627 A.2d at 192; see also
Cameron v. Graphic Mgmt. Assocs., Inc., 817 F. Supp. 19, 21
(E.D. Pa. 1992).

The Supreme Court of Pennsylvania has said, "[t]he gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it." A "perversion" of legal process occurs when a party uses the process "primarily to accomplish a purpose for which the process was not designed." Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 304 (3d Cir. 2003) (quoting McGee v. Feege, 535 A.2d 1020, 1023 (Pa. 1987)).

A claim for abuse of process differs from a malicious prosecution claim in that a malicious prosecution claim has to do with the wrongful initiation of the legal process, i.e., without probable cause and with a bad motive, whereas abuse of process arises when a prosecution is initiated legitimately but "thereafter is used for a purpose other than that intended by law." Napier v. City of New Castle, No. 06-1368, 2007 WL 1965296, at *6 (W.D. Pa. July 3, 2007) (quoting Jennings v. Shuman, 567 F.2d 1213, 1217 (3d Cir. 1977)), aff'd, 407 F. App'x 578 (3d Cir. 2010); see also Rosen, 627 A.2d at 192.

While the two torts are not mutually exclusive, and both torts may have occurred where a process is both wrongfully initiated and thereafter perverted for some unlawful purpose, merely continuing to pursue a claim that was initiated with malice does not transform a malicious prosecution claim into an action for abuse of process. See Jennings, 567 F.2d at 1218-19;

35

*Evans v. Durham Life Ins. Co.*, No. 00-281, 2001 WL 770803, at *2
(E.D. Pa. 2001).

When a plaintiff's complained-of injuries occurred in
connection with the initial filing of criminal charges and
arrest, those injuries constitute malicious prosecution, not
abuse of process. *Napier*, 407 F. App'x at 582; *see also Barnett
v. York Cnty.*, No. 11-0906, 2011 WL 2790467, at *20 (M.D. Pa.
June 24, 2011), *report and recommendation adopted*, 2011 WL
2791320 (M.D. Pa. July 14, 2011).

Here, the plaintiff makes no arguments in his
complaint or his opposition brief about any of the legal process
following his arrest, other than that there were seven
preliminary hearing listings, all of which were continued at the
request of the government.[15]  Compl. ¶ 20; Municipal Court Docket
for *Commonwealth v. Giordano*.  That fact alone evidences no

----

[15] At oral argument, Mr. Giordano raised for the first time
the issue of the delay in the criminal charges being dismissed.
He stated to the Court that his criminal counsel had provided
exculpatory evidence to the police and the District Attorney's
Office.  He argued that extending his prosecution to seven
preliminary hearing dates, without dismissal of the charges, was
improper and that the defendant should have had the case
dismissed sooner.  12/17/13 Tr. at 6:18-7:13, 9:17-22, 13:16-21.
The defendant argued that charging and prosecution decisions are
up to the District Attorney's Office, and are not the result of
any actions by the defendant.  *Id.* at 11:24-12:8.  The Court
finds no evidence to support this argument in the record, and
even the statements made at oral argument do not support that
Mr. Giordano's prosecution was "primarily to accomplish a
purpose for which the process was not designed."  *Rosen*, 627
A.2d at 192.

perversion of legal process.  Thus, the plaintiff's only argument with regard to abuse of process is in connection with his arrest.  That can only be the basis for a claim of malicious prosecution, not for abuse of process.


#### 4.   Assault and Battery

"Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk, 641 A.2d at 293 (quoting Cohen v. Lit Bros., 70 A.2d 419, 421 (Pa. Super. Ct. 1950)).  A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty.  In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest.  The reasonableness of the force used in making the arrest determines whether the officer's conduct constitutes an assault and battery.  Id.

Detective Moreno-Nix had no physical contact with Mr. Giordano during the course of his arrest.  Moreno-Nix Aff. ¶ 40. Mr. Giordano told police that only men had offensive contact with him.  Jan. 3, 2012 Statement of Anthony Giordano at 1-2; Feb. 3, 2012 Statement of Anthony Giordano at 1-3.  Mr. Giordano also described minimal injuries as a result of his arrest.  He

stated that his injuries were "just a bruise on my thigh.  I never went to the hospital."  Jan. 3, 2012 Statement of Anthony Giordano at 3.  Furthermore, he never obtained any medical treatment for these injuries.  Id.

Thus, Detective Moreno-Nix cannot be liable for assault and battery of the plaintiff because she had no physical contact with him, and the plaintiff has shown no record evidence to establish this as a material issue of fact.  See, e.g., Greco v. Nat'l R.R. Passenger Corp., No. 02-6862, 2005 WL 3591196, at *7 (E.D. Pa. Dec. 30, 2005).[16]


5.   Intentional Infliction of Emotional Distress

While the Pennsylvania Supreme Court has yet to formally recognize a cause of action for intentional infliction of emotional distress, see Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000), the Pennsylvania Superior Court recognized the cause of action and held that, "in order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the

---

[16] Furthermore, there is no evidence in the record that the defendant was a supervisor of the SWAT team, such that the defendant could have any liability for any assault and battery allegedly committed by the individual SWAT team members.

plaintiff."  Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005).

The tort of intentional infliction of emotional distress requires conduct of an "extreme or outrageous type." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988). The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.  Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987).

Additionally, to succeed on an intentional infliction of emotional distress claim, the plaintiff must show that he suffered "some type of resulting physical harm due to the defendant's outrageous conduct."  Swisher, 868 A.2d at 1230.  A plaintiff must show that his injury as a result of the outrageous conduct is supported by "competent medical evidence." Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995 (Pa. 1987).  If a plaintiff cannot point to any physical harm he suffered as a result of police conduct, the plaintiff's intentional infliction of emotional distress claim fails as a matter of law for that reason alone.  Reedy v. Evanson, 615 F.3d 197, 232 (3d Cir. 2010).

The plaintiff admits that his physical injuries as a result of the arrest were minimal, "just a bruise on my thigh."

Jan. 3, 2012 Statement of Anthony Giordano at 3.  Furthermore,
he never obtained any medical treatment for this injury.  Id.
He also never described any injury as being a result of
Detective Moreno-Nix's conduct.

The plaintiff only briefly states that he was stressed
as a result of his arrest and was prescribed Xanax, which is
unsupported by any other evidence in the record.  Dec. 19, 2011
Criminal Complaint at 28.  There is no medical evidence in the
record, whatsoever, to support physical injuries by the
plaintiff as a result of any conduct by the defendant.  Thus,
summary judgment is granted to the defendant on the plaintiff's
intentional infliction of emotional distress claim.

6.   Negligence and Negligent Infliction of Emotional
Distress

As discussed above, the plaintiff concedes that his
counts of negligence and negligent infliction of emotional
distress should be dismissed.  Pl.'s Opp. at 7.  Because the
plaintiff does not oppose summary judgment on these claims,
summary judgment is granted to the defendant on the negligence
and negligent infliction of emotional distress claims.

C. Official Capacity Claims

        Mr. Giordano has not distinguished between claims brought against Detective Moreno-Nix in her individual capacity and claims brought against her in her official capacity.  Any claims brought against Detective Moreno-Nix in her official capacity are considered to be a suit against the Philadelphia Police Department.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . . It is not a suit against the official personally, for the real party in interest is the entity."); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").  The plaintiff has also not named the Philadelphia Police Department as a defendant.  Because the plaintiff makes no allegations involving the Philadelphia Police Department and presents no evidence regarding the actions of the Philadelphia Police Department, summary judgment is granted to the defendant on those claims asserted against her in her official capacity.

III. <u>Conclusion</u>

For the foregoing reasons, the Court grants summary judgment in the defendant's favor on all of the plaintiff's claims.  An appropriate Order shall issue.